UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:02 CR 61 |
| | ) | |
| TIMOTHY J. JULIAN | ) | |

## OPINION and ORDER

Before the court is defendant's *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c) and Section 603 of the First Step Act. (DE # 162.) For the reasons that follow, the motion is denied.

**I.     BACKGROUND**

In the late 1990's, defendant marketed and rented rooms in a mansion in Acapulco, Mexico, to pedophiles interested in traveling to have sex with boys. *United States v. Julian*, 427 F.3d 471 (7th Cir. 2005). The boys, considered "escorts" who were included in the room price, were typically homeless or runaway boys whom defendant and his partner recruited off the beaches and town square of Acapulco. *Id.* Defendant facilitated a request from a customer to bring one of the boys back to the United States illegally. *Id.* Previously, defendant had pleaded guilty to sexually molesting his 11-year-old stepson. *Id.*

In 2003, a jury convicted defendant of knowingly and intentionally conspiring to travel in foreign commerce for purposes of engaging in a sexual act with a juvenile in violation of 18 U.S.C. § 2423 (Count 1), and transportation of an individual with intent to engage in prostitution and aiding and abetting in violation of 18 U.S.C. § 2421 and § 2

(Count 2). Judge Rudy Lozano sentenced defendant to 300 months of incarceration (180 months on Count 1, and 120 months on Count 2, to be served consecutively), to be followed by 3 years of supervised release. (DE # 106.) Defendant appealed unsuccessfully. (DE # 121.) Judge Lozano later denied defendant's collateral attack filed under 28 U.S.C. § 2255. (DE # 136.) Defendant has been incarcerated for nearly 20 years. His projected release date is February 2, 2024, just over 2 years from now. Federal Bureau of Prisons, *BOP Inmate Locator*, https://www.bop.gov/inmateloc/ (last accessed Dec. 20, 2021).

Defendant is presently incarcerated at FCI Milan, a facility with a population of approximately 1,471. Federal Bureau of Prisons, *FCI Milan*, https://www.bop/gov/locations/institutions/mil/ (last accessed Dec. 20, 2021). Current BOP records indicate that 0 inmates presently have COVID-19 at this facility. Federal Bureau of Prisons, *Coronavirus*, https://www.bop.gov/ coronavirus/ (last accessed Dec. 20, 2021). The BOP further reports that 1,029 of the 1,471 inmates at defendant's facility have been vaccinated against COVID-19, and 219 have recovered from infection. (*Id.*)

Defendant moved *pro se* for compassionate release. (DE # 162.) Defendant asserts that he has chronic hypertension, hepatitis C, degenerative disc disease, arthritis, sciatica, an enlarged prostate, an irregular heartbeat, and a history of smoking. (*Id.* at 4; DE # 174 at 3.) He also asserts that the dangers of the COVID-19 pandemic justify his immediate release. (DE ## 162, 174.) The Federal Community Defender's Office declined to represent defendant in this matter. (DE # 165.) The Government opposes

2

defendant's motion. (DE # 169.) Defendant has filed a reply (DE # 171) and supplemental brief (DE # 174).

## II. ANALYSIS

Generally, a court is statutorily prohibited from modifying a term of imprisonment once imposed. *See* 18 U.S.C. § 3582(c). A handful of statutory exceptions exist, however, one of which allows a court to grant a convicted defendant compassionate release if the defendant meets certain requirements. *See* 18 U.S.C. § 3582(c)(1)(A). The court may grant a defendant's motion for compassionate release if: (1) the defendant has complied with the statute's administrative exhaustion requirement; (2) "extraordinary and compelling" reasons warrant such a reduction; (3) the court has considered the factors set forth in 18 U.S.C. § 3553(a), as applicable; and (4) the reduction is consistent with any applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).

### 1. Exhaustion

Section 3582(c)(1)(A) requires a defendant to exhaust all remedies with the BOP before moving for compassionate release. Specifically, a defendant may file a request for compassionate release with a district court "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A).

In this case, the Government does not contend that defendant has failed to exhaust, and the court perceives no such barrier, either.

**2.      Extraordinary and Compelling Reasons**

The court is only authorized to grant defendant's request if there exist "extraordinary and compelling reasons" justifying early release. 18 U.S.C. § 3582(c)(1)(A). Congress did not define "extraordinary and compelling reasons" in § 3582(c)(1)(A), instead delegating this task to the Sentencing Commission. 28 U.S.C. § 994(t). The Sentencing Commission defines this phrase in the commentary to Section 1B1.13 of the United States Sentencing Guidelines.

Presently, Section 1B1.13 is binding only upon the Director of the BOP, and not a district court considering a motion for compassionate release. *United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020). However, the Seventh Circuit in *Gunn* noted that "[t]he substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling reasons'" for a district court to employ. *Id.* at 1180. Indeed, the *Gunn* court noted that "a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused." *Id.* Therefore, this court utilizes Section 1B1.13 and its application notes as useful, even if not binding, guidance in determining whether defendant has identified an extraordinary and compelling reason for compassionate release. *Id.*

4

Application Note 1 to Section 1B1.13 defines an "extraordinary and compelling" situation as one involving a prisoner who has "a serious . . . medical condition that substantially diminishes the ability . . . to provide self-care within the environment of the correctional facility." *Id.*

In this case, the court is skeptical that defendant meets the advisory standard set forth in Section 1B1.13. While defendant has a number of concerning health conditions, defendant also lists numerous medications he is taking as prescribed by prison staff (DE # 162 at 4), and presents no evidence to suggest his conditions are not well-controlled and monitored, or that he has a diminished ability to care for himself while incarcerated. *See, e.g., United States v. Bunnell,* No. CR14-00119-001-PHX-DGC, 2019 WL 6114599 (D. Ariz. Nov. 18, 2019) (defendant "suffers from arthritis, sciatica, bulging lumbar discs 2-5, scoliosis, and degenerative disease causing central stenosis in his spine," and is confined to a wheelchair, but none are terminal illnesses or substantially diminish ability to provide self-care within the environment of a correctional facility); *United States v. Clark,* 3:13-cr-163-FDW-1, 2019 WL 1052020, at *3 (W.D.N.C. Mar. 5, 2019) (defendant suffering from declining health, diabetes, kidney failure, and back problems requiring a walker did not demonstrate that condition substantially diminished ability to provide self-care within the corrections environment or that she was not expected to recover). Though defendant has physical challenges, defendant appears adequately capable of navigating prison life for approximately 2 more years until his sentence expires.

Further, though the court further acknowledges that some of defendant's conditions or a combination thereof could place him at higher risk for complications if infected by COVID-19, the court must also consider the fact that defendant's facility currently has 0 inmate cases of COVID-19, and a substantial number of the facility's inmates have been vaccinated (at least 1,029 of 1,471). Federal Bureau of Prisons, *Coronavirus,* https://www.bop.gov/ coronavirus/ (last accessed Dec. 20, 2021).

In fact, the BOP offers COVID-19 vaccination to all federal prisoners. *United States v. Ugbah,* 4 F.4th 595, 597 (7th Cir. 2021) (citing *COVID-19 Vaccine Guidance* (Mar. 11, 2021)). Accordingly, the Seventh Circuit has held that a prisoner who is medically able to receive or benefit from the available vaccines cannot use the risk of COVID-19 to obtain compassionate release. *Id.; United States v. Broadfield,* 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release.").

In all, the combination of defendant's particular health conditions, the low risk of COVID-19 at defendant's particular institution, and the availability of vaccinations lead the court to conclude that extraordinary and compelling reasons do not exist to justify compassionate release in this case. However, even if the court were to decide otherwise, that is not the end of the analysis, as explained in more detail below.

3.  **Section 3553(a) Factors**

Even if a defendant presents extraordinary and compelling reasons justifying compassionate release, the court must still consider the relevant factors of Section 3553(a). 18 U.S.C. § 3582(c)(1)(A)(I). Section 3553(a) states:

(a) Factors to be considered in imposing a sentence. — The court shall consider–

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence[s] and the sentencing range established for--

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission . . . ;]

(5) any pertinent policy statement guidelines [issued by the Sentencing Commission ...;]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In this case, a consideration of relevant Section 3553(a) factors weighs in favor of not granting defendant's petition for compassionate release. As explained above, defendant was convicted of abhorrent crimes related to the use of foreign boys in prostitution. Defendant maintained actual innocence in his Section 2255 petition. In his filings, he demonstrates little remorse. These aspects of defendant's personal characteristics and history weigh against any further reduction of defendant's sentence.

Requiring defendant to serve the remainder of his sentence would also promote respect for the law and provide just punishment for defendant's offense. Abolishment or reduction of defendant's sentence would not further either goal. Additionally, society would receive some benefit from defendant serving the remainder of his sentence, as he will not be able to commit any further sex crimes while incarcerated. Requiring defendant to complete his sentence also has deterrent value, both for defendant as well as others who might consider engaging in such despicable behavior for profit. For these reasons, the court finds that the relevant Section 3553(a) factors weigh in favor of requiring defendant to serve the remainder of his sentence.

### 4. Consistency with Policy Statements

As explained above, Congress (and, by delegation, the Sentencing Commission) created § 1B1.13, a policy statement related to compassionate release requests, which the Seventh Circuit has instructed district courts to consider as useful guidance. *Gunn*, 980

8

F.3d at 1180. That policy statement provides that compassionate release is only appropriate if the defendant is not a danger to the safety of any other person or to the community. U.S.S.G. § 1B1.13.

Defendant argues that he would present no danger if released from prison. The court is unpersuaded. Defendant was not only convicted of the charges in this case, but he also has a prior history of molestation. This pattern of behavior is greatly concerning.

Further, defendant's behavior while incarcerated has not been exemplary. Defendant argues that, for at least the last 9 years or so, he has been relatively well-behaved, except for one serious incident. Specifically, defendant chose to engage in a fight rather than request protective custody, because he "it was the only [choice] he had, if he didn't want to transfer [to another facility] again."(DE # 162 at 15.) Defendant's poor reasoning in this instance is further evidence that the extraordinary remedy of compassionate release is not appropriate in this case. Defendant's continued incarceration ensures the community's safety for the remainder of his term of imprisonment.

### III. CONCLUSION

For the foregoing reasons, the court **DENIES** defendant's motion for compassionate release. (DE # 162.) The related motion to hold in abeyance (DE # 168) is **DENIED** as moot.

**SO ORDERED.**

Date: December 21, 2021

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT

9